OPINION
{¶ 1} Appellants, the Huang family, appeal from the judgment of the Portage County Court of Common Pleas, which affirmed the Kent City School District Board of Education's decision to suspend the Huangs' son, Carl, for five days. Because the board failed to file conclusions of fact pursuant to R.C. 2506.03(A)(5), we reverse.
 {¶ 2} Substantive and Procedural History *Page 2 
 {¶ 3} On February 13, 2007, after his biology class, S. "Carl" Huang, was told by his biology teacher, Mr. Zagray, to accompany him to the assistant principal's office. Assistant Principal Sommers was not there, however, so Mr. Zagray told him to report back after the next period, refusing to give any indication as to what the meeting was about. After seventh period, Carl went to Mr. Sommers' office, where he was confronted by six individuals, including Mr. Sommers, Mr. Zagray, Mr. Sidoti, Mr. Chris Carmen, Mr. Aaron Boggs, and Mr. Joe Luscre.
 {¶ 4} During the meeting, Carl was questioned about a recent high grade he received on a biology test. He confessed that he had gotten into the biology test bank via the internet by guessing the correct password. Mr. Zagray had allowed students access to the test bank the previous semester, giving them permission to study from possible test questions. The following semester he changed the rules and the password. He had the password changed specifically at his request from "SPANKY" to "CARL," which is in fact, Carl's "American" name. Both Carl and his parents are Chinese citizens and are in this country on student and work visas.
 {¶ 5} Carl confessed that his friend, who was very knowledgeable about computers, had broken into the computer system when he slept over at Carl's house one evening. Carl admitted that he was naïve in that the situation was much more serious than he first believed, not realizing the ramifications of breaking into a school computer network. He was frustrated with Mr. Zagray's method of teaching, and his new policy not to let the students study from the test bank, as Mr. Zagray advocated a methodology of "independent study." *Page 3 
 {¶ 6} During this first meeting Mr. Sommers partially filled out with Carl a "notice to student of removal and/or intended suspension," citing various violations of the student code. The form was completed two days after the initial meeting due to a snow day in between. Carl received the completed notice during the second meeting with Mr. Sommers, and Carl showed it to his parents when they picked him up from school. Mr. Sommers noted on the form that he called Mr. and Mrs. Huang and that there was no answer; that the suspension would be for five days; and that there would be a possible recommendation for expulsion "pending no further incidents of this type." Carl had in fact, up to this point, been a straight "A" student, as well as a master violinist, and had never been in trouble before this overzealous, misguided pursuit of academic success.
 {¶ 7} On that same day of the second meeting, February 15, 2007, Mr. Sommers purported to send a letter to Mr. and Mrs. Huang informing them of Carl's suspension, the reasons behind it, and notifying them of their rights to appeal and to be represented. The Huangs, at the hearing before the board, denied ever receiving the notice, but they did read the copy that Carl had received and thus, had notice of the suspension and their rights to due process.
 {¶ 8} The Huangs retained counsel, and sought a hearing before the board to challenge the reasons for the suspension and allow Carl to explain his actions. Subsequently, the Huangs were sent another letter from Mr. Sommers, informing them that he was further recommending that Carl be expelled for "violation of statutes." The Huangs filed a suspension appeal pursuant to R.C. 3313.66, and a hearing was held on March 23, 2007, before the Assistant Superintendent and Appeal Hearing Officer for the Kent Board of Education, Dr. Joe Giancola. Present at the hearing were the Huangs, *Page 4 
their counsel, and Mr. Sommers. Also pending were criminal charges by the Kent State Police and possible expulsion by the board for further violation of statutes. These issues are not involved in this appeal, nor were they appropriate subjects of the hearing.
 {¶ 9} Dr. Giancola had originally informed the parties that the hearing could only last one hour since "it was a busy day," and Huangs' counsel relied on this representation in setting up his next client appointment. He objected during the hearing to the time that Dr. Giancola spent on the matters relating to expulsion, because the hearing was to be solely concerned with the suspension appeal and not any subsequent charges. It appeared Carl had used his friend's password at school to check the NBA statistics, and it is presumably from this action the expulsion charges resulted. In addition, Mr. Sommers recommended pursuing criminal charges to the board since Ohio statutes were violated by the computer break-in.
 {¶ 10} Dr. Giancola wrote the Huangs a letter following the hearing, informing them that Carl's suspension should be upheld because the "suspension process prescribed by Ohio law was followed and because the nature of the infractions merited the consequences administered." No conclusions of fact were sent to the Huangs or filed pursuant to R.C. 2506.03(A)(5).
 {¶ 11} The Huangs subsequently appealed to the Portage County Court of Common Pleas, and filed a motion to present additional evidence pursuant to R.C. 2506.03, citing additional evidence they wanted to present including further cross-examination of the witnesses, and because no conclusions of fact were promulgated by the board in upholding Carl's suspension. The trial court denied the motion, and later affirmed the decision of the board. Specifically, the trial court held that the board's *Page 5 
decision was supported by substantial and probative evidence, and that the board complied "with each and every requirement set forth in R.C. 3313.66."
 {¶ 12} The Huangs now timely appeal and raise three assignments of error for review:
 {¶ 13} "[1.] The trial court committed prejudicial error by denying Appellants' request for an evidentiary hearing under R.C. 2506.03 in order to supplement the administrative record filed by appellees.
 {¶ 14} "[2.] The trial court committed prejudicial error by finding Appellees complied with each and every requirement set forth in R.C. 3313.66.
 {¶ 15} "[3.] The trial court committed prejudicial error in finding that the record conclusively establishes Appellees' suspension order was supported by the preponderance of substantial, reliable, and probative evidence."
 {¶ 16} Standard of Review for Administrative Appeals
 {¶ 17} "Judicial review of an R.C. Chapter 2506 administrative appeal is normally confined to a review of the complete transcript filed in the common pleas court." Eckmyer v. Kent City School Dist. Bd. of Educ.
(Nov. 3, 2000), 11th Dist. No. 99-P-0117, 2000 Ohio App. LEXIS 5123, 12, citing Boncha v. Mentor Mun. Planning Comm. (May 1, 1998), 11th Dist. No. 97-L-084, 1998 Ohio App. LEXIS 1943, 11. If, however, "the transcript is deficient or incomplete, R.C. 2506.03 provides for the trial court to conduct an evidentiary hearing to `fill in the gaps.'" Id. at 12-13.
 {¶ 18} Because the board did not comply with R.C. 2506.03, we agree with the Huangs' contention that they were entitled to a hearing at which the parties should have been able to submit additional evidence. *Page 6 
 {¶ 19} Failure to File Conclusions of Fact
 {¶ 20} In their first assignment of error, the Huangs argue that the trial court erred in failing to follow the prescribed procedures of R.C. 2506.03 because they requested an evidentiary hearing in a timely manner, because the transcript failed to record all statements made, and because the board failed to file conclusions of fact. The board conceded to the trial court that it failed to file conclusions of fact with the transcript of the proceedings, but argued that the trial court could deduce the conclusions from a review of the record. The trial court agreed, affirming the judgment of the board.
 {¶ 21} We agree, however, with the Huangs that the trial court erred in denying their request for an evidentiary hearing since no conclusions of fact were filed. On this basis, we reverse. The serious ramifications, which include deportation, as a result of Carl's suspension, warrant that the mandatory statutory procedure of R.C. 2506.03 should have been followed, as it should be in every administrative appeal.
 {¶ 22} Pursuant to R.C. 2506.03, a trial court is required to conduct an evidentiary hearing, when, among other things, the administrative agency files a deficient or incomplete transcript.
 {¶ 23} Thus, R.C. 2506.03 provides:
 {¶ 24} "(A) The hearing of an appeal taken in relation to a final order, adjudication, or decision * * * shall proceed as in the trial of a civil action, but the court shall be confined to the transcript filed under section 2506.02 of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following applies:
 {¶ 25} "* * *. *Page 7 
 {¶ 26} "(5) The officer or body failed to file with the transcript, conclusions of fact supporting the final order, adjudication or decision appealed from;
 {¶ 27} "(B) If any circumstances described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. * * *"
 {¶ 28} We have held in previous cases that the failure to file such conclusions is fatal, and that the trial court must hold an evidentiary hearing to allow the parties to introduce additional evidence. Thus, inRoute 20 Bowling Alley, Inc. v. City of Mentor (Dec. 22, 1995), 11th Dist. No. 94-L-141, 1995 Ohio App. LEXIS 5721, we determined that "[w]here the transcript of proceedings filed by the administrative agency does not include conclusions of fact, the common pleas court is `without authority to remand the matter or permit supplementation of the transcript to avoid the requirement of hearing additional evidence submitted by any party.'" Aria's Way, LLC v. Bd. of Zoning Appeals, 173 Ohio App.3d 73, 2007-Ohio-4776, ¶ 14, quoting Route 20 at 11.
 {¶ 29} Recently, in Aria's Way, we again reversed on this very issue, revisiting our past cases, and reiterating our past holding that "R.C. 2506.03(A)(5) requires that the agency `file with the transcript, conclusions of fact.' This statute further provides: `If any circumstances described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party.' It is axiomatic that the word `shall' indicates a mandatory requirement." Id. at ¶ 22, citing State ex rel. Botkins v. Laws (1994), 69 Ohio St.3d 383. Thus, in that case, we reversed because the trial court allowed the agency to file conclusions of fact after the filing of the transcript. We found this procedure in violation *Page 8 
of R.C. 2506.03 because the issue was not whether the conclusions of fact were filed in a "timely" manner, but rather, whether they were "filed with the transcript." Because they were not, "the transcript was deficient on its face and an R.C. 2506.03 hearing was required." Id. at ¶ 23.
 {¶ 30} Similarly in Eckmeyer, we reversed and remanded for the trial court to conduct an evidentiary hearing because we found the trial court erred in allowing the appellees to complete the transcript of proceedings by filing conclusions of fact after the transcript was filed without first holding a hearing in accordance with R.C. 2506.03. Id. at 12.
 {¶ 31} Underlying these holdings is the rationale that "a common pleas court should, when faced with a transcript of proceedings lacking appropriate conclusions of fact, hold an evidentiary hearing to establish the factual basis for the decision being appealed. Otherwise a court runs the risk of allowing in evidence that had not been subjected to the adversarial process and is possibly inaccurate." Id. at 17.
 {¶ 32} In this case, the board conceded that they failed to file conclusions of fact pursuant to R.C. 2506.03(A)(5), yet they urged the court that their conclusions could be gleaned from the record by reviewing it in its entirety. The board further urged that the Huangs had basically received conclusions of fact in the February 15, 2007 notice of intent to suspend form, as well as the March 23, 2007 letter to the Huangs' notifying them of the board's decision to uphold the suspension. Neither of these, however, are sufficient to satisfy the requirement of filing conclusions of fact. The board also argued in its brief that the rest of the evidence could be deduced from the record. The trial *Page 9 
court agreed and made its own conclusions of fact in its judgment entry. This, however, is in clear contradiction of the procedural mandates of R.C. 2506.03.
 {¶ 33} In Rife v. Franklin Cty. Bd. of Zoning (Sept. 15, 1994), 97 Ohio App.3d 73, the Tenth Appellate District was confronted with the same factual situation that is presented here, where the trial court relied on documentary evidence in the record in deducing conclusions of fact, ultimately denying the appellants an evidentiary hearing, and affirming the judgment of the board. The court found that the "inclusion of the administrator's memorandum as part of the transcript of proceeding" could not satisfy the requirements of R.C. 2506.03(A)(5)." Id. at 7. In noting that this was deficient, the court also pointed out that crucially, as here, there was no indication that the board expressly adopted the administrator's memorandum or any of the findings of fact contained in it. Id. Similarly here, we do not know which of the rules Carl was found to have violated from reviewing the notice of intent to suspend. Nor do we know what factual conclusions the board determined support those violations.
 {¶ 34} In short, there is no question that Carl violated school rules by breaking into the test bank, and we do not condone such behavior by reversing the trial court's affirmance of the board's suspension. Carl, however, still deserved an opportunity to present additional evidence, as he correctly attached an affidavit to his appeal brief pursuant to R.C. 2506.03, averring that he wanted to present additional evidence, and that he was not finished cross-examining the witnesses. Even more fundamentally, no conclusions of fact were provided following the hearing, thus, the transcript is deficient on its face. We find that for both reasons, the trial court should have granted an *Page 10 
evidentiary hearing pursuant to the procedural mandates of R.C. 2506.03. We reverse on this basis.
 {¶ 35} The trial court's determination that the board complied with each and every requirement of R.C. 3313.66, an argument the Huangs challenge in their second assignment of error, is with merit as we have determined that the board did not follow the proper procedure pursuant to R.C. 2506.03 by its failure to file conclusions of fact.
 {¶ 36} For the same reason, we find the Huangs' third assignment of error, which challenges the trial court's finding that the record conclusively establishes that the suspension order was supported by the preponderance of substantial, reliable, and probative evidence, to be with merit as the board failed to file proper conclusions of fact. Thus, the trial court's judgment is not supported by a preponderance of substantial, reliable, and probative evidence.
 {¶ 37} We reverse the judgment of the Portage County Court of Common Pleas.
 DIANE V. GRENDELL, J., COLLEEN MARY OTOOLE, J., concur. *Page 1